Evelyn JAMISON, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,**
Defendant.

**Civ. A. No. 4–72519.**

United States District Court,
E. D. Michigan, S. D.

March 10, 1975.

David M. Barbour, Detroit, Mich., for plaintiff.

Gwenn L. Carr, Asst. U. S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

PHILIP PRATT, District Judge.

Plaintiff filed her first application for a period of disability on June 21, 1965. It was denied on January 28, 1966. Plaintiff's second application, filed May 19, 1969, resulted in an initial determination on June 26, 1969, finding that plaintiff was not disabled. Plaintiff did not request review of the decision. Plaintiff filed a third such request on February 20, 1973, which was denied on April 30, 1973. She requested reconsideration on July 24, 1973, which affirmed the initial determination on September 26, 1973. She then requested a hearing on October 2, 1973 and on June 18, 1974 an Administrative Law Judge dismissed plaintiff's request for a hearing, after limited review, based on the following regulations:

20 CFR § 404.937

"The Administrative Law Judge may, on his own motion, dismiss a hearing request * * * under any of the following circumstances:

(a) *Res judicata.* Where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the same facts pertinent to the same issue or issues which has become final * * * upon the claimant's failure timely to request * * * hearing, or review * * *."

20 CFR § 404.957

"An initial * * * determination of the Administration * * * which is otherwise final * * * may be reopened:

(b) After such 12 month period, but within 4 years after the date of the notice of the initial determination to the party to such determination, upon a finding of good cause * * *"

20 CFR § 404.958

" 'Good cause' shall be deemed to exist where:

(a) New and material evidence is furnished after notice to the party to the initial determination;

* * * * * *

(c) There is an error * * * on the face of the evidence on which such determination or decision is based."

The Administrative Law Judge, after consideration of the doctor's reports offered by plaintiff (See Hearing Order, p. 3–4), concluded that there was no new and material evidence to warrant reopening of the case. Therefore, the previous determinations were res judicata.

Plaintiff then sought review, by the Appeals Council, which affirmed the decision of the Administrative Law Judge. Plaintiff then instituted this action, seeking a reversal of that determination. Defendant brings the instant motion to dismiss under Rule 12(b), or in the alternative, for summary judgment, claiming that the plaintiff's claim is res judicata, that it may not be reopened, and that the decision is not judicially reviewable because a determination of res judicata is not addressed to the merits and is therefore not a "final decision" within the meaning of 42 U.S.C. § 405(g). Plaintiff answers (although in substance, it is a cross-motion), claiming that plaintiff was not represented by counsel in the first cases, that plaintiff did establish good cause for reopening the decision, that there was error on the face of the decision, and that defendant is estopped to assert res judicata in that it considered plaintiff's 1973 application and ruled on the merits.

 Plaintiff's claim concerning lack of counsel is insufficient to merit reopening. A claim which is not reconsidered or subject to further review becomes final (20 CFR § 404.908; 20 CFR § 404.916; § 404.940, § 404.951). The effect of a determination is no less conclusive at the initial than at later stages of consideration. The strong policy of finality (See Sangster v. Gardner, 371 F.2d 498 (6th Cir. 1967)) embodied in the regulations and the application of

res judicata (Easley v. Finch, 431 F.2d 1351 (4th Cir. 1970) is defeated only for three reasons (20 CFR § 404.958). Absence of counsel per se is not one such ground. In fact, to hold that lack of counsel justifies reopening would seriously impair finality, especially at the early stages, where only five per cent of claimants are represented (Easley v. Finch, *supra,* at 1353).

 Nevertheless, absence of counsel may, in the appropriate circumstances, constitute "error on the face of the evidence," and warrant reopening. It is clear, however, that mere absence of counsel at the prior proceeding is not sufficient. (*Easley, supra*; Criddle v. Richardson, 334 F.Supp. 344 (S.D.W. Va.1971). Rather, there would probably have to be some showing of facial prejudice resulting from that absence.[1] The Sixth Circuit, in Arms v. Gardner, 353 F.2d 197 (6th Cir. 1965) has suggested one such instance. In that case, claimant's attorney, though present, did not participate meaningfully in the hearing. The Court reversed the determination of the hearing examiner. In the case at bar, however, there is no comparable manifest prejudice. There is no allegation that plaintiff could have adduced more evidence. In fact, she did produce five reports (Tr. pp. 135, 132, 138–41, 133, 137). Nor can this Court presume, as it is asked to do, that she did not understand the nature of the proceedings. The correspondence from the Secretary is clear;[2] the frequency with which unschooled, unrepresented claimants pursue their recourse has been noted. (See Easley v. Finch, *supra,* 431 F.2d at 1353). Furthermore, there is no indication that plaintiff's failure to exhaust her remedies is attributable to lack of

---

[1]. It is important to note that "error on the face" was present in Staskel v. Gardner, 274 F.Supp. 861 (E.D.Pa.1967), cited by plaintiff. In that case, the hearing examiner failed to comply with the regulations, thus denying claimant a proper hearing. In addition, the court held that res judicata had been waived. Thus, there were ample

grounds for reopening apart from lack of counsel, which was used to buttress the conclusion.

[2]. The letter after initial determination says "If you want reconsideration, *you must request it not later than six months from the date of this notice.*

counsel.[3] Thus, this Court could not find that she was effectively denied a hearing on that basis.

In addition, there is no prejudice on the face of the record, as required by 20 CFR § 404.958. There is nothing appearing in the transcript, as was the case in *Staskel, supra,* and might have been in *Arms, supra,* to indicate prejudice. Furthermore, it is not clear that the facts in *Arms* would present grounds for reopening. That case arose in the context of direct review of a Secretary's decision, unhampered by the considerations of finality and specific exceptions operative in the case at bar. Therefore, this Court is constrained to reject plaintiff's contention.

Two issues then remain which require discussion: (1) whether the Government is precluded from asserting res judicata by its failure to assert it prior to hearing, and (2) whether the res judicata decision was arbitrary and capricious.

Plaintiff's next contention, unsupported by legal authority, is that the Secretary should have asserted res judicata at the initial stages of the 1973 action. By failing to do so during the initial determination and reconsideration, plaintiff asserts the Secretary is estopped from doing so at the hearing before the Administrative Law Judge. In support thereof, plaintiff points to the language of the correspondence notifying her of the decisions. Specifically, she emphasizes the letter of April 30, 1973 (Tr. p. 97), which refers to "studying your records . . . and considering your age, education, training, and experience, it has been determined that your condition was not disabling." Similiarly, on September 26, 1973 (Tr. p. 101) the Secretary wrote, ". . . we had your claim independently reviewed by a physician and disability examiner. . . .

All the evidence in your case has been thoroughly evaluated . . . ."

██ Plaintiff's argument, however, is untenable. The ability of the Administrative Law Judge to consider res judicata is independent of any prior determinations by the Secretary. Res judicata is reserved for the Administrative Law Judge. 20 CFR § 404.905 provides for an initial determination by the Administrator, according to findings of fact. 20 CFR § 404.910 indicates that reconsideration is available on the issue of eligibility. 20 CFR § 404.914 directs that a reconsideration be based on the findings of the initial determination.[4] Thus, the regulatory scheme does not contemplate consideration of res judicata at the first two stages of inquiry.

██ Subsequent to reconsideration, a claimant may request a hearing by an Administrative Law Judge, pursuant to 20 CFR § 404.917 et seq. The statute and regulations provide that the hearing is a de novo proceeding, with fresh fact finding and evaluation of the evidence.[5] Therefore, even were it possible to raise res judicata earlier, the Administrative Law Judge approaches the claim as if there had been no prior decision. Therefore, his ability to determine the res judicata effect should not be restricted.

Furthermore, it is only at the hearing stage that res judicata is considered. 20 CFR § 404.937, specifies:

"The *Administrative Law Judge* may, *on his own motion,* dismiss a *hearing request* * * * under any of the following circumstances:

(a) Res judicata * * * * "
(Emphasis added).

Thus, it is the Administrative Law Judge who may, at the hearing stage, consider res judicata. In addition, he

---

3. In fact, her 1969 application did not even proceed to reconsideration, at which stage some 95% of claimant's have no attorneys.

4. It is noteworthy that the possibility of res judicata was recognized on reconsideration

(Tr. p. 100), despite the fact that it is reserved for later consideration.

5. See 42 U.S.C. § 405(b); 20 CFR § 404.-924, § 404.927, § 404.928, et seq.

may do so sua sponte, without regard to whether the parties have done so. Failure to have notified claimant earlier is irrelevant. It is only logical that legal considerations be reserved for an official with legal expertise.

■■ Finally, plaintiff's claim of estoppel requires a showing of detrimental reliance (1 Williston on Contracts, § 139 (3rd Ed. 1957), Ins. Co. of North America v. McCleave, 462 F.2d 587 (3rd Cir. 1972). Plaintiff has failed to demonstrate, nor can this Court discern any prejudice. Therefore, plaintiff's argument must be rejected.

The Secretary contends that denial of a hearing on grounds of res judicata is not reviewable, and that even if it is, it was not erroneous.

■ It is well settled in this Circuit that a decision by the Administrative Law Judge not to reopen (pursuant to 20 CFR § 404.957) is reviewable by the Court, under the Administrative Procedures Act, for abuse of discretion (Maddox v. Richardson, 464 F.2d 617 (6th Cir. 1972)).[6] Review of the decision not to reopen, in essence, constitutes review of the res judicata decision because the two are virtually synonymous. 20 CFR § 404.937 and § 404.957 operate in such a way that a prior final decision[7] is res judicata unless one of the criteria for reopening applies. In the instance of the "new evidence" basis, at issue here, if the Administrative Law Judge finds new evidence, the res judicata effect is nullified and the claim is reopened. If he finds no new evidence, then the claim is not reopened, and the prior determination is binding. That is, the facts and issues remain identical. Alternatively, if there is "clear error" a decision is not res judicata. Therefore, this Court may review the Administra-

tive Law Judge's decision which refused to reopen res judicata grounds for abuse of discretion.[8]

■ Thus, the pertinent inquiry is whether the failure to find that plaintiff had come forward with new evidence or that there was not clear error was an abuse of discretion. (Maddox v. Richardson, *supra*). The inquiry "requires a finding that the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. * * * The Court is not empowered to substitute its judgment for that of the agency." (Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S. Ct. 814, 823, 28 L.Ed.2d 136 (1970)).

Plaintiff's 1973 evidence consists of reports of Drs. Ruble (Tr. p. 125), Madrid (Tr. p. 159), Schaeffer (Tr. pp. 10, 17, 163), Kaftan (Tr. pp. 142, 156), and Weckstein (Tr. 164). In addition, she and her husband both testified at a limited hearing (Tr. pp. 39, 63). Her prior evidence consisted of reports by Drs. Ruble (Tr. p. 135), Sultzman (Tr. p. 132), Purcell (Tr. pp. 138, 141), as well as two hospital summaries (Tr. pp. 133, 137). A comparison of the two sets of evidence convinces this Court that there was no clear error on the part of the Administrative Law Judge.

■ Dr. Ruble merely reiterates his earlier findings in his February 27, 1973 report with regard to her orthopedic problems. References to urinological ailments are either cumulative (See Tr. pp. 132, 137) or recent in origin.[9] Dr. Madrid's report does not significantly differ from that of Dr. Ruble's earlier

6. Therefore, defendant's Ninth Circuit cases to the contrary are inapposite.

7. Such as the 1969 determination here.

8. This Court cannot accept defendant's argument that there is no requisite final agency action.

9. Plaintiff must show that evidence must relate to ailments which she had prior to September, 1964, when she last qualified for benefits. (See 42 U.S.C. §§ 416(i)(3) and 423(c).

reports which noted "mild degenerative arthritis" (Tr. p. 136) in 1965, and Dr. Purcell, who described her various arthritic problems (Tr. p. 138). Dr. Kaftan's diagnosis of osteoarthritis (Tr. p. 142) does not differ from prior reports; chest pain and dyspnea appeared in 1970. Dr. Schaeffer's evaluation, which plaintiff admits is cumulative,[10] restates the findings of Drs. Sultzman (Tr. p. 132), Purcell (Tr. pp. 138, 141) and Ruble (Tr. p. 136). Dr. Weckstein observes her "nervousness," which, he explains is due to fear of becoming a burden to others and desire to help others (Tr. p. 165). His impression that she suffers a "psychogenic musculoskeletal reaction" is not new evidence. It is merely his theory of causation and label of her previously defined symptoms of arthritis and anxiety (Tr. pp. 135, 136). The key to his diagnosis appears to be "nervousness;" his statements concerning her fears and desires are historical.

Furthermore, even if the evidence is new, there is a serious question as to its materiality. 42 U.S.C. § 423(d) requires that a claimant be unable to engage in "substantial gainful activity." The doctor speaks of her inner hostility and "inability to tolerate demands" (Tr. p. 165) as offering a satisfactory reason to justify her not accepting a job. He recommends volunteer work and finds her logic and reasoning intact. However, he does not address any severe loss of physical function, or find a mental incapacity. Thus, his conclusions do not establish that plaintiff is unable to engage in "substantial gainful activity," but merely that she is not so inclined. Such a condition has not been considered "disabling" by the courts. (See Conn v. Richardson, 320 F.Supp. 832 (W.D.Va. 1970); Lang v. HEW, 348 F.Supp. 33 (D.Md.1972); Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)). Therefore this Court cannot say that the decision

of the Administrative Law Judge in that regard was a clear error of judgment.

Plaintiff's own testimony focuses on bursitis (Tr. p. 39), trigger finger (Tr. p. 40), stiffness in the right shoulder (Tr. p. 41), arthritis in the hand (Tr. p. 42), numbness in the hand (Tr. pp. 43, 61), limited motion in the right knee and foot (Tr. p. 43), arthritis in the back (Tr. p. 45), chest pains (Tr. p. 50) and nervousness (Tr. p. 51)[11] and that her previous condition had worsened (Tr. p. 56). Her husband testified as to her numbness (Tr. p. 63) and falling (Tr. pp. 65, 66). Prior reports referred all the complaints (Tr. p. 95 reviews prior evidence) except chest pains, which, as Dr. Kaftan noted, appeared in 1970 (Tr. p. 142). Thus, the only conceivably "new and material" evidence is plaintiff's claim that her original pain was intensified. However, the decision of the Administrative Law Judge to bypass that testimony is not unjustified in light of Dr. Ruble's extensive notes establishing the scope of her ailments (Tr. pp. 127–130) and Dr. Weckstein's opinion that she attempted to falsify medical results (Tr. p. 164), her interest in the outcome of the case (Foss v. Gardner, 363 F.2d 25 (8th Cir. 1966)); and the proper role of the Administrative Law Judge in assessing credibility (Lane v. Gardner, 374 F.2d 612 (6th Cir. 1967)). Therefore, this Court is hard-pressed to brand the determinations as "arbitrary and capricious."

Nor can this Court overturn the Administrative Law Judge's decision that the earlier determination was not subject to attack on its face as a "clear error of judgment." A "disability" within the meaning of the Act entails a finding that a claimant is unable to engage in "substantial gainful activity." (42 U.S.C. § 423(d)). Dr. Ruble indicated that her condition was "static," and the only restrictions on her activity

---

10. See plaintiff's brief at page 5.

11. Plaintiff also testified that her gall bladder was removed and that her right leg

bothered her, but did not indicate that this onset was prior to September, 1964.

were "no lifting or manual work." Dr. Purcell remarked that, "I think this individual has considerable capacity to function, without any definite limitation." (Tr. p. 138). He found her functions from full to moderate (Tr. p. 141).[12]

Even as late as February, 1971, Dr. Kaftan indicated in his report that after a couple of weeks of home rest " . . . she may return to work." (Tr. p. 143).

Therefore, the 1973 determination by the Administrative Law Judge should stand, and defendant's motion is granted.

12. Both of those reports were made in 1965. However, plaintiff does not appear to have offered any new evidence on the issue of gainful activity in 1969. Therefore, the proofs were identical for both applications (Tr. p. 87). Furthermore, the disability examiner notes that in 1969, there was no new evidence, hence basis for reopening the prior determination (Tr. p. 87). Therefore, the real question at hand is not whether there was clear error in finding no disability, but whether there was clear error in finding no new evidence. A review of the 1969 submissions indicates that there was not introduced any new and material information. (Tr. p. 137).